Harold G. Williams v. Commissioner.
Williams v. Commissioner
Docket No. 54316.
United States Tax Court
T.C. Memo 1959-104; 1959 Tax Ct. Memo LEXIS 143; 18 T.C.M. (CCH) 460; T.C.M. (RIA) 59104; May 22, 1959
*143 Petitioner's gain on the sale of a tankship is allocated between long-and short-term capital gain. Edward McCarthy, Esq., for the petitioner. Roger L. Davis, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: This proceeding involves petitioner's personal income tax for the calendar year 1947. In a Memorandum Opinion, filed November 30, 1956 [; , this Court held that petitioner was not entitled to capital gains treatment on his share of the proceeds realized by Marine Industries upon the sale of a tankship to the Sinclair Refining Company. Petitioner appealed, and on June 17, 1958, the United States Court of Appeals for the Fifth Circuit issued its opinion, affirming in part and reversing in part our decision and holding specifically that the tankship was a capital asset. The court then remanded the case for further consideration as to how the gain should be apportioned. . Upon motion by the parties, the case was set for trial for the purpose of taking further evidence. The new evidence consists of a stipulation *144 of facts, oral testimony, and an exhibit. The pertinent facts may be briefly stated. Petitioner, a resident of Jacksonville, Florida, filed a separate income tax return for the calendar year 1947 with the then collector of internal revenue for the district of Florida. On March 19, 1946, Marine Industries, a partnership composed of petitioner and others, and hereinafter referred to as the partnership, acquired title to a partially completed naval tankship, hereinafter referred to as the YO-206. In the same month the partnership began negotiations with the Sinclair Refining Company, hereinafter referred to as Sinclair, for sale of the YO-206 to Sinclair. The YO-206, which had a capacity of only 6,500 barrels, did not fit the requirements of Sinclair, which required a tankship with a minimum capacity of 10,000 barrels for its Cuban operation. It also needed a vessel equipped with coils to permit carrying molasses. Sinclair was very much interested in getting a completed ship that could be classified and immediately transferred to Cuba. On May 13, 1946, the partnership entered into a contract with Sinclair, reciting that it was the desire of Sinclair to purchase, and of the partnership *145 to sell, the YO-206 after it had been completed as a tankship. The contract incorporated a contemporaneous agreement with the Gibbs Corporation (hereinafter referred to as Gibbs) for the lengthening of the vessel by some 46 feet and the completion as a tanker. By the terms of the contracts Sinclair was to pay the partnership $365,000 for the completed tankship, $65,000 of which was to be paid at the time of the signing of the agreement. Sinclair was also to pay Gibbs $194,000, which was to be credited on the purchase price of the tankship. The partnership agreed that upon completion of the tankship and acceptance by Sinclair, the partnership would have the vessel admeasured, documented, and classed to the highest class of vessel for her tonnage and characteristics. Sinclair agreed that upon completion and final acceptance of the vessel and upon delivery of a bill of sale it would pay the partnership the balance of the purchase price, $106,000. The partnership agreed to repair or replace any defective material furnished by the partnership appearing within 90 days after the vessel was completed. The partnership registered the vessel as the F. C. Randall on November 13, 1946. On the *146 same day the partnership executed a bill of sale transferring its title to the registered vessel to Sinclair. Prior to May 13, 1946, the partnership expended the sum of $57,373.77 toward the acquisition of the F. C. Randall. During the period from May 13, 1946, to November 13, 1946, the partnership directly expended the sum of $33,262.42 toward the acquisition of the F. C. Randall. In the same period Sinclair paid Gibbs $187,500 for construction work on the vessel. [1]
The partnership expended the sum of $6,515.43 as costs of sale of the F. C. Randall. The exact profit which the partnership realized from the sale of the vessel was undertermined until after construction was completed and the guarantee period had expired. The question before us is how the gain realized by petitioner upon the sale of a tankship should be apportioned between long and short-term capital gain. Respondent contends that both the bare hull and improvements were acquired by the partnership and were the subject of sale to Sinclair for a total price of $358,500. Respondent apportions the *147 gain on a percentage basis, arrived at by considering the cost of rebuilding the vessel as a part of the partnership's cost of acquisition and as a part of the sales price. Petitioner agrees, on brief, that the gain should be allocated in proportion to costs. However, he urges that the gain should be apportioned in accord with a percentage basis computed on a total sales price of $171,000, excluding from cost of acquisition and from sales price the payments made by Sinclair to Gibbs for reconstruction of the vessel. We are of the view that respondent's position is correct. In its opinion remanding this case to the Tax Court, the Court of Appeals stated: "The sales contract between Sinclair and Marine Industries recited the desire of Sinclair to purchase and of Marine Industries to sell the YO-206 'after it shall have been completed as a tankship.' After the YO-206 had been completed or converted it was registered as the F. C. Randall and transferred from Marine Industries to Sinclair by bill of sales dated November 13, 1946. * * * Obviously something more than the hull YO-206 was acquired by Marine Industries and sold to Sinclair. The partially completed YO-206 and perhaps some *148 additional portion of the later completed tankship were held for the six month period, and the portion of the gain allocable to that part of the tankship which had been completed more than six months before the sale should be accorded long-term capital-gain treatment." We take this language to mean that what the partnership sold to Sinclair was the completed tankship F. C. Randall. The sales contract provided for the sale of the completed tankship for $365,000. The purchase price was to be composed of payments in the total amount of $171,000, to be made directly to the partnership, and of payments in the total amount of $194,000, to be made to Gibbs but to be credited on the purchase price with the same force and effect as if made directly to the partnership. It was agreed that the partnership was to guarantee for a period of 90 days after completion all materials it furnished. Petitioner, himself, testified that the exact profit which the partnership realized from the transaction was undetermined until after construction was completed and the guarantee period had expired. Clearly, the cost of rebuilding the partially completed YO-206 into the F. C. Randall was a part of the partnership's *149 cost of acquisition and should be included when computing the gain on the transaction. The gain realized by petitioner on the transaction should be apportioned between long-and short-term capital gain, as follows: Selling price
$358,500.00
Stipulated cost of acquisition more than 6
months prior to sale (20.6%)
$ 57,373.77
Stipulated cost of acquisition within 6
months (79.4%)
220,762.42
Total cost of acquisition
278,136.19
Gross gain
$ 80,363.81
Costs of sale
6,515.13
Net gain
$ 73,848.38
Petitioner's share (one-half)
36,924.19
Petitioner's long-term capital gain (20.6%)
7,606.38
Petitioner's short-term capital gain (79.4%)
29,317.81
Decision will be entered under Rule 50. Footnotes
1. The original contract called for a payment of $194,000; however, this was later reduced to $187,500.↩